■ INTERSHOE, INC., Respondent, v BANKERS TRUST COMPANY, Appellant. BANKERS TRUST COMPANY, Appellant, v INTERSHOE, INC., et al., Respondents.—Order of the Supreme Court, New York County (Harold Baer, J.), entered on or about April 13, 1989, which denied Bankers Trust Company's motion seeking dismissal of the complaint pursuant to CPLR 3211 (a) (1) and (7) and summary judgment on its counterclaim pursuant to CPLR 3212, affirmed, without costs.

Bankers Trust sought summary judgment on the strength of a confirmation slip, signed by Intershoe's treasurer, which documented an oral contract for the exchange of dollars and lira. The confirmation stated that, on March 13, 1985, Bankers Trust had purchased 537,750,000 lira from Intershoe at a rate of 2,151 lira per dollar ($250,000) to be delivered during October 1985.

In opposition to the motion, Intershoe submitted the affidavit of its treasurer which states that the confirmation slip does not reflect the actual order that it placed with defendant orally over the telephone. The affidavit asserts that Intershoe had, in fact, instructed the bank to purchase lira *on its behalf* in the foreign exchange market, and not to purchase lira *from* it as the confirmation slip reflects. In support of Intershoe's position, it is further asserted that the company is in the business of importing shoes; that it employs foreign currency futures contracts to protect itself against currency fluctuations and to set prices, in dollar terms, for future selling seasons; that, in its course of dealing with Bankers Trust, Intershoe has entered into approximately 1,000 contracts for the future delivery of foreign currency to its account, including two other future purchases of currency made during the course of the same conversation during which the contract at issue was made; and that only once, in another year, had Intershoe ever sold foreign currency to Bankers Trust, and then only for present delivery and not under a futures contract. Bankers Trust never rebutted this showing and never offered the affidavit of its employee who took Intershoe's order on March 13 to contradict Intershoe's version of the events. We note that Bankers Trust now tape records all such telephone transactions.

Bankers Trust, for the first time on this appeal, seeks to invoke the parol evidence rule set forth in UCC 2-202 to bar Intershoe's contradiction of the terms appearing on the confirmation slip. The argument, which is apparent on the face of the record and, therefore, may be entertained (*Matter of Knickerbocker Field Club v Site Selection Bd.,* 41 AD2d 539), is

in any event not dispositive. Nothing in the confirmation slip indicates that it was intended to be the final expression of the parties' agreement and, indeed, Bankers Trust's deposition testimony on this point is equivocal *(see, Crispin Co. v Delaware Steel Co.,* 283 F Supp 574 [ED Pa]). Moreover, the unusual circumstances disclosed by this record raise issues of fact as to whether the terms contained in the confirmation slip represent a mistake by both parties as to the terms of their actual agreement *(see, Backer Mgt. Corp. v Acme Quilting Co.,* 46 NY2d 211, 219). In cases of mutual mistake, the parol evidence rule is unavailable to bar evidence of the parties' prior oral agreement *(Marine Midland Bank-Southern v Thurlow,* 53 NY2d 381, 387; *Chimart Assocs. v Paul,* 66 NY2d 570, 573-574). Summary judgment is inappropriate where there is any question as to the existence of a triable issue *(Rotuba Extruders v Ceppos,* 46 NY2d 223, 231). Concur —Kupferman, J. P., Wallach and Rubin, JJ.

Asch and Kassal, JJ., dissent in a memorandum by Asch, J., as follows: In my opinion, the court at nisi prius should have granted summary judgment in favor of defendant Bankers Trust Company and hence dismissed the complaint of Intershoe, Inc., the plaintiff. Accordingly, I dissent from the contrary position held by the majority.

The issue here is the conclusive effect of a foreign currency futures confirmation slip signed by plaintiff. Plaintiff contends that the confirmation contained terms different from those reached by the parties in their initial oral transaction over the telephone.

Intershoe, Inc. purchases shoes in foreign countries including Italy. In order to protect itself against currency fluctuations and to set prices for the future selling season in dollar terms, its practice has been to enter into foreign currency future contracts. In effect, this fixes the purchase price of the shoes, in dollar terms, months in advance of the time plaintiff has to pay the supplier in, for example, Italian lira. For these purposes, plaintiff Intershoe utilized the services of Bankers Trust. During their course of dealing, Intershoe entered into approximately 1,000 contracts for the future delivery of lira to Bankers Trust.

On March 13, 1985, Intershoe's treasurer telephoned Bankers Trust and gave instructions for three foreign currency transactions. He asserts all three were to purchase foreign currency for delivery at a later date, consistent with Intershoe's regular practice. Yet, even Intershoe concedes that two of the orders involved Spanish pesetas, certainly not the usual

practice of Intershoe. Bankers Trust recorded the transaction as two foreign currency purchases and one foreign currency sale. It then sent Intershoe confirmation forms for these three transactions as recorded. The treasurer received these forms on March 18, 1985, verified that the dollar and foreign currency amounts were correct, ·but on the one presently in dispute purportedly overlooked that it was for the sale rather than for the purchase of lira. He then signed all three confirmations and returned them to Bankers Trust.

The signed confirmation form at issue here states Bankers Trust is to purchase 537,750,000 lira at the rate of 2,151 lira per dollar for $250,000, to close between October 1-31, 1985. Bankers Trust executed the transaction as stated on the confirmation slips.

On October 11, 1985, Bankers Trust sought Intershoe's performance of the transaction, by delivery of lira. Intershoe refused, asserting Bankers Trust was seeking to enforce a "mistaken contract".

Upon failure to settle the ensuing dispute, Intershoe won the race to the courthouse and got to be designated plaintiff. Bankers Trust moved to dismiss Intershoe's complaint and for summary judgment on its counterclaim. Essentially, the motion was based on the documentary evidence of the confirmation slip signed by Intershoe. In opposition, Intershoe's treasurer gave his version of all the circumstances previously outlined and asserted Intershoe did not engage in foreign currency future contracts for speculation. Intershoe acquiesced and even relied upon Bankers Trust's deposition testimony that a binding contract was entered into over the telephone, and that if Intershoe had complained about any error in the confirmation slip in March 1985, even after its treasurer had signed it, Bankers Trust would have reversed the transaction.

The IAS court denied Bankers Trust's motion, finding issues of fact as to whether the parties intended to be bound to the oral agreement and what the terms of such oral agreement were.

However, I agree with appellant Bankers Trust that the parol evidence rule bars Intershoe's reliance on prior negotiations· or agreement to contradict the terms of the written confirmation slip-contract. UCC 2-202 is applicable to foreign currency futures contracts, analogous to commodity contracts. The statute provides: "Terms with respect to which the confirmatory memoranda of the parties agree or which are other-

wise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement". Here, of course, Intershoe does not seek to explain or supplement the confirmation slip with parol evidence, but rather to contradict it, indeed reverse the written terms.

There are no undecided issues of fact which prevent a grant of summary judgment. The parties both agree that that telephone conversation represented their agreement. The confirmation is clear on its face and it was signed by the authorized representative of Intershoe. Intershoe argues that an issue of fact is raised as to whether the signed writing, the confirmation slip, was the "final expression" of the agreement. However, the confirmation unambiguously confirms Intershoe's agreement to sell Italian lira to Bankers Trust at the specified rate and requests Intershoe to manifest its assent to the terms contained therein by signing the confirmation and returning it to Bankers Trust. Where the "intention of the parties is fully determinable from the language employed in the agreement", the interpretation of the written agreement is for the court to decide as a matter of law (*Long Is. R. R. Co. v Northville Indus. Corp.*, 41 NY2d 455, 461).

Finally, it is urged by Intershoe that this may be a case of mutual mistake as to the writing. Intershoe's treasurer conceded factual issues as to mistake on its part, but that is all. He had the opportunity to read the confirmation, and he signed it. The case is subsumed under the rule of *Pimpinello v Swift & Co.* (253 NY 159) that a party is bound to what he signs whether or not he reads it.

If the lira had fallen in relation to the dollar in the interim, Intershoe might very well have been willing to perform what would then have been a profitable contract, even if mistaken, and, on the other hand, Bankers Trust might well have been willing to allow Intershoe to claim mistake; but, of course, the dispute arises because the lira had increased in value in relation to the dollar during the relevant period.

As between the parties, it seems clear that the plaintiff, which had the opportunity to correct the misunderstanding which it asserts took place, should bear the loss. Any other approach would be devastating to sound commercial practice. The type of claim of mistake by a foreign currency futures customer, as in this case, can hardly be given a warm reception, as it all too easily provides a hedge of its own against currency fluctuations.